The STATE of Ohio, Appellee,

v.

HENRY, Appellant.

[Cite as *State v. Henry*, 151 Ohio App.3d 128, 2002-Ohio-7180.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 01 JE 30.

Decided Dec. 18, 2002.

Bryan Felmet, Jefferson County Prosecuting Attorney, and Richard H. Ferro, Assistant Prosecuting Attorney, for appellee.

Pate & Marshall and Samuel A. Pate, for appellant.

DeGenaro, Judge.

{¶ 1} This matter comes for consideration upon the record in the trial court, the parties' briefs, and their oral argument before this court. Appellant James J. Henry appeals from the judgment of the County Court No. 1, Jefferson County, Ohio, convicting him of one count of public indecency in violation of R.C. 2907.09(A)(3). The issues we must decide are (1) whether Henry had a reasonable expectation of privacy when he was in an open area of a restroom at a public rest stop, (2) whether the police were required to obtain a warrant before placing video surveillance equipment in a public restroom, and (3) whether all the elements of public indecency were established by sufficient evidence.

{¶ 2} First, we conclude that, because Henry was observed in the common area of a restroom where any other male member of the general public could have entered and witnessed his behavior, he had no reasonable expectation of privacy so long as he remained in the common area. Next, we conclude that the police did not need a warrant to install the video surveillance camera in the public restroom because it was positioned in such a way that it would record only areas that could be properly viewed by any person, officer, or civilian who had entered the common area of the restroom. Finally, we conclude that there was sufficient evidence to sustain Henry's conviction of public indecency. Accordingly, we affirm the judgment of the trial court.

{¶ 3} Prior to Henry's being charged with public indecency, the police had received numerous complaints regarding sexual activity, vandalism, and theft at the rest area located at the junction of State Routes 213 and 7. In response to these complaints, the police began physical surveillance of the rest area. However, Police Chief Kenneth Hayes explained that the surveillance did not deter the activity. Subsequently, a camera was installed in the common area of the restroom that would run in the late evening and early morning hours. Significantly, the camera could not record any activity within the stalls, nor could the camera record the front of individuals when using the urinals.

{¶ 4} On May 9, 2001, Henry used the male facilities at the rest area at 9:59 p.m. The surveillance camera recorded Henry's activities that appeared to be masturbation. Henry was charged with public indecency in violation of R.C. 2907.09(A)(3) and disorderly conduct in violation of R.C. 2917.11(A)(4). Henry filed a motion to suppress the video surveillance tape, and an evidentiary hearing was held. The trial court overruled the motion.

{¶ 5} Prior to trial, the state nolled the charge of disorderly conduct but proceeded on the charge of public indecency. At the close of state's evidence, Henry moved for acquittal, but his request was denied. Henry was convicted on the charge of public indecency and now appeals from that conviction.

{¶ 6} As his first assignment of error, Henry argues:

{¶ 7} "The trial court errered [sic] in overruling appellant's motion to suppress the video surveillance camera tape placed in the urinal area of a male public restroom facility without a search warrant."

{¶ 8} This court's standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. *State v. Winand* (1996), 116 Ohio App.3d 286, 288, 688 N.E.2d 9, citing *Tallmadge v. McCoy* (1994), 96 Ohio App.3d 604, 608, 645 N.E.2d 802. This is the appropriate standard because " '[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' " *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, quoting *State v. Venham* (1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831. However, once this court accepts those facts as true, it must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard. *State v. Williams* (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141.

{¶ 9} Henry argues that the placement of the video surveillance camera in the restroom violated his Fourth Amendment right under the United States Constitution because it was done without a warrant. Because the police did not conduct a "search," we disagree. The Fourth Amendment provides:

{¶ 10} "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

{¶ 11} The modern theory of search and seizure law is that the Fourth Amendment serves to protect the individual's subjective expectation of privacy that society is prepared to accept as "reasonable." *Rakas v. Illinois* (1978), 439 U.S. 128, 143–144, 99 S.Ct. 421, 58 L.Ed.2d 387; *Katz v. United States* (1967), 389 U.S. 347, 360–361, 88 S.Ct. 507, 19 L.Ed.2d 576 (Harlan, J., concurring). One implication of this theory is that law enforcement officers do not infringe upon any constitutionally protected interest when they intrude upon a place where an individual does not have a reasonable expectation of privacy. In those situations, it is said that no "search" has occurred within the meaning of the Fourth Amendment, and evidence obtained thereafter need not be suppressed. E.g., *Illinois v. Andreas* (1983), 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003.

{¶ 12} "[T]he application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,'

or a 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland* (1979), 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220. The United States Supreme Court has subsequently adopted the test of justifiable expectation of privacy set forth in Justice Harlan's concurrence in *Katz.* See *Smith,* supra; *Hudson v. Palmer* (1984), 468 U.S. 517, 525, 104 S.Ct. 3194, 82 L.Ed.2d 393.

{¶ 13} The *Katz* analysis consists of two separate inquiries. The first is whether the individual, by his conduct, has exhibited an actual, subjective expectation of privacy. *Katz,* supra, 389 U.S. at 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (Harlan, J., concurring). In the words of the *Katz* majority, the individual must show that he "seeks to preserve [something] as private." Id. at 351, 88 S.Ct. 507, 19 L.Ed.2d 576. The second question is whether the individual's subjective expectation of privacy is one that society is prepared to recognize as "reasonable" or is " 'justifiable' under the circumstances." *Smith v. Maryland,* supra.

{¶ 14} The question we must first address, then, is whether the placement of the surveillance camera in the public area of the restroom constituted a "search," which, in turn, depends upon whether Henry had a reasonable expectation that the common area of the restroom would remain private. See *State v. York* (Aug. 29, 1997), 11th Dist. No. 96–L–182.

{¶ 15} The Fifth Appellate District was presented with a similar set of facts in *State v. Johnson* (1987), 42 Ohio App.3d 81, 536 N.E.2d 648. Two state highway patrolmen were on routine patrol when they stopped to check the rest area on U.S. Route 250. The officers did so as a result of a local State Highway Patrol policy that was set in response to prior unspecified complaints of homosexual activity at the rest area. Upon pulling into the rest area, one of the officers noticed two unoccupied vehicles parked there. The officer left the patrol car to inspect the two outhouse-type toilet facilities. Upon entering the first facility, he opened the door to the pit toilet stall and observed the defendants engaging in the act of fellatio. The officer then arrested the defendants for loitering and public indecency.

{¶ 16} The defendants pled not guilty to public indecency and, following the denial of their motions to suppress, were convicted by the trial court. Like Henry, the defendants in *Johnson* argued that the trial court should have suppressed the fruits of the search because the search was in violation of their constitutional rights under the Fourth Amendment to the United States Constitution.

{¶ 17} The court acknowledged that the officer had no warrant to search the toilet, nor did he have probable cause to believe that criminal activity was occurring at that time. The court then recognized that the defendants manifest-

ed a subjective expectation of privacy in the toilet stall. However, the court explained, "we must decide whether the appellants' expectation of privacy is the kind of expectation 'that society is prepared to recognize as "reasonable." ' " Id., 42 Ohio App.3d at 83, 536 N.E.2d 648, quoting *Katz*, supra, 389 U.S. at 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (Harlan, J., concurring).

{¶ 18} The *Johnson* court commented that the defendants engaged in a homosexual act in a pit toilet stall in a public rest area. The facility was very primitive, nothing more than a public outhouse, and, notably, the stall had no lock on the door. The court concluded:

{¶ 19} "Even though the trooper's intrusion was offensive, we do not think that society is prepared to recognize as reasonable an expectation of privacy of people engaging in sexual acts in a public outhouse with no lock on the door. Therefore, we find that the Fourth Amendment prohibition against unreasonable searches and seizures does not apply in the case at bar so as to require exclusion of the fruits of Trooper Lumpcik's 'search.' " Id. at 84, 536 N.E.2d 648.

{¶ 20} Similarly, in *State v. McClung* (Mar. 3, 1982), 1st Dist. No. C–810299, 1982 WL 4678, the arresting officer, employed by the University of Cincinnati as a security officer, had received complaints that the fourth-floor Teacher's College restroom was being used from time to time for homosexual activity. While in plain clothes, he inspected the restroom by going through the main entrance door, through a small foyer, and into the main area through a set of swinging doors. He observed feet that were visible under the short doors of the adjacent cubicles. The officer also noted the feet in stall three were close to and facing the wall separating the stalls and that the feet in stall two were also close to the separating partition but with the toes facing away from it.

{¶ 21} The officer could see into toilet stalls two and three through 3/8-inch-to-1/2-inch openings between the stall doors and the frames on the sides of the stall doors. The officer observed a hole in the marble partition between toilet stalls two and three and a penis protruding through the hole from stall three. After several minutes of observing what appeared to be sexual activity, the officer ordered the occupants from the stalls and arrested them. The defendant was charged with public indecency, a violation of R.C. 2907.09(A)(2). During the time of these events, there was a painted sign in the restroom in bold red letters that read, "No Loitering—Under Police Surveillance."

{¶ 22} The defendant moved to suppress all evidence derived from the officer's surveillance; however, that motion was overruled. The defendant argued that the police officer's observation constituted an unconstitutional search because he had a reasonable expectation of privacy within the enclosed restroom stall.

{¶ 23}  The *McClung* court disagreed, stating:

{¶ 24}  "We hold that the police officer's action of standing in the public area of a restroom and observing, without the aid of electronic devices or mirrors, events which any member of the public could have observed through the open frame areas of the toilet stalls does not constitute a prohibited search under the fourth amendment.  It is our conclusion that appellant did not possess an expectation of privacy such that his constitutional rights were infringed upon when the officer observed the activity.  Any subjective expectation of privacy which appellant might have entertained is not reasonable under these circumstances where the public, without the aid of electronic or other devices, could have observed the activity within the toilet stalls.  Moreover, we cannot accept the argument of reasonable expectation of privacy on behalf of appellant where a visible sign proclaims, 'No Loitering Under Police Surveillance.'"  Id. at 4–5.

{¶ 25}  Likewise, the Second District in *State v. Million* (1989), 63 Ohio App.3d 349, 578 N.E.2d 869, found that a defendant has no reasonable expectation of privacy concerning what can be seen below the level of the stall partition.

{¶ 26}  "In fact, it is a common enough practice to bend down to check for a pair of feet, in order to determine whether a stall is occupied, so as to avoid inadvertently barging into an occupied stall, and thereby invading another's legitimate expectation of privacy.  Furthermore, it has been held that an occupant of a stall in a public restroom has no reasonable expectation of privacy, sufficient to protect him from a warrantless examination of the part of the stall below the level of the stall partition, by police officers, in order to look for anything suspicious, such as two pairs of feet.  *State v. Tanner* (1988), 42 Ohio App.3d 196, 537 N.E.2d 702, and the cases cited therein from other jurisdictions."  Id. at 351–352, 537 N.E.2d 702.

{¶ 27}  Finally, in *State v. Thurman* (Apr. 30, 1980), 1st Dist. No. C–790398, the trial court overruled a motion to suppress evidence obtained by officers equipped with cameras who were hidden behind a bathroom wall.  The officers could view the entire bathroom area, including the interior of six bathroom stalls, through ventilator screens located in the wall.  The defendant entered one of the doorless restroom stalls and proceeded to commit what the officers described as an act of masturbation.

{¶ 28}  After reviewing the evidence, the court found that the defendant had no reasonable expectation of privacy reasoning:

{¶ 29}  "Not only was there unimpeached testimony that the stall was without a door so that anyone walking through the public area of the restroom could freely observe his actions therein, there was also testimony that another person using the restroom was observing the appellant's activity intently."

{¶ 30} "Assuming arguendo, however, that a subjective expectation was present, we are firmly convinced that it was not reasonable under the circumstances simply for the reason stated above that the Appellant knowingly exposed himself to public view by masturbating in a doorless stall, the interior of which was plainly visible from the public area of the restroom. Under such circumstances, it is constitutionally immaterial that the police observed the activity from a concealed location or that he may have ceased masturbating if he had been aware that others were watching him." Id. at 7–8.

{¶ 31} Considering that the defendants in *Johnson, McClung, Million,* and *Thurman,* who were at least partially concealed behind bathroom stalls, were found to have no reasonable expectation of privacy, we believe that an individual would have even less of an expectation in the common areas of a restroom. Other districts tend to agree.

{¶ 32} For example, in *State v. Hardin* (Apr. 14, 1982), 1st Dist. No. C–810426, 1982 WL 8472, officers were searching a bar for a woman fitting a description given to them by an informant. Upon entering the bar, the officers saw some 50 people, none of whom fit the physical description. After searching the main area of the bar, one of the officers entered the women's restroom, where he observed a woman who matched in detail the description provided by the informant. The woman was standing in the restroom's common area talking with two other women. After the police officer indicated to the woman that he intended to search her, she turned over to him an envelope containing 77 Talwin tablets and 53 Pyribenzamine tablets.

{¶ 33} The defendant was indicted for trafficking in a controlled substance pursuant to R.C. 2925.03(A)(2). After the trial court overruled her motion to suppress the evidence obtained incident to her arrest, the defendant pleaded no contest to the charge set forth in the indictment. Thereafter, the trial court found the defendant guilty of violating R.C. 2925.03(A)(2). The defendant maintained that her arrest was illegal and thus the evidence seized pursuant to that arrest should have been excluded. She argued that her arrest was illegal because the male police officer had no legal justification for entering the women's restroom where she was arrested.

{¶ 34} The court rejected this argument, stating:

{¶ 35} "The record in this cause does not support the appellant's thesis that she had an actual or subjective expectation of privacy upon entering the women's restroom. It is clear that the appellant was standing in the public area of the restroom, i.e., that part separate from sheltered toilet facilities, and that anyone entering the restroom could freely observe the appellant and her activities therein. Even if we assume, arguendo, that the appellant held such a subjective expectation of privacy, we hold that it was patently unreasonable under the

circumstances since, as we just stated, the appellant was in full view of any person entering the restroom. The fact that the officer entering the restroom was male is immaterial to the question of the appellant's privacy expectation. Thus, we hold that the appellant lacked a reasonable expectation of privacy and was not entitled to invoke whatever constitutional guarantees against an unreasonable search and seizure which might, arguably, otherwise obtain." Id. at 3–4.

{¶ 36} In the present case, the state argues that Henry turned away from the urinal and exposed himself to the common area of the restroom and engaged in conduct that, to an ordinary observer, would appear to be sexual conduct or masturbation. The state further contends that Henry "clearly wished to perform his sexual act of masturbation or simulation of masturbation in plain view in the common area of the restroom, instead of seeking even the minimal amount of privacy by masturbating in the confines of the urinal or a toilet stall." As evidenced by the surveillance tape, Henry was not hidden in a stall but was exposed to anyone who might have entered the restroom. In fact, a person was using one of the stalls when Henry was masturbating and could have easily walked out and seen the behavior. Henry himself testified at the suppression hearing that it was a public restroom, and anyone could have walked in at any moment.

{¶ 37} In light of the fact that Henry chose not to enter a toilet stall, he did not have a subjective expectation of privacy. Even if Henry did expect to keep his actions private, Ohio courts have found that society is not prepared to recognize as reasonable an expectation of privacy by persons engaging in behavior in restrooms that goes beyond the intended purposes of the restroom, i.e., sexual acts. There is no dispute between the parties that Henry was exposed in a common area of a public restroom.

{¶ 38} Nonetheless, Henry maintains that society is not prepared to have law enforcement clandestinely conduct lengthy indiscriminate video surveillance of the urinal area inside of a male public restroom without requiring the police to first obtain a search warrant. Henry repeatedly refers to these actions taken by the police as an unreasonable warrantless search. However, the videotaped surveillance of the common area would not rise to the level of a "search" since there is no reason why the police would be precluded from viewing what would be visible to a private citizen. See State v. Claytor (1993), 85 Ohio App.3d 623, 620 N.E.2d 906; State v. Howell (Apr. 23, 1991), 4th Dist. No. 1679, 1991 WL 87289.

{¶ 39} If the Fourth Amendment does not protect an area or item, it is not necessary to determine whether an exception to the warrant requirement applies. For example, there is no recognized privacy expectation in an open field

outside a residence.  See *Oliver v. United States* (1984), 466 U.S. 170, 180–181, 104 S.Ct. 1735, 80 L.Ed.2d 214.  Police do not need a warrant, or an exception, to search for or seize marijuana plants or a still found in an open field, or a weapon found on a street, under what is termed the "open view" doctrine.  See id.; *Hester v. United States* (1924), 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898.  In such cases, there is no search because the police can observe the item without a prior physical intrusion into a constitutionally protected area.  *State v. Harris* (1994), 98 Ohio App.3d 543, 547, 649 N.E.2d 7, 9–10, quoting 1 LaFave, Search and Seizure (2d Ed.1987) 321–322, Section 2.2(a).

{¶ 40}  It has been established that, in the present case, Henry was not observed in a constitutionally protected area.  He stepped away from the urinal stall and was exposed to the common area of the restroom.  Yet Henry maintains that the method used to observe him in the public restroom was inappropriate.  However, the videotaping of activity occurring in full public view does not violate any justified expectation of privacy.  W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment (2d Ed.1987), Section 2.2(e).

{¶ 41}  It has been held that the police may record what they normally view with the naked eye.  *United States v. Sherman* (C.A.9, 1991), 990 F.2d 1265.  The Ninth Circuit explained in *United States v. McIver* (C.A.9, 1999), 186 F.3d 1119, 1125, "[T]he use of photographic equipment to gather evidence that could be lawfully observed by a law enforcement officer does not violate the Fourth Amendment."  Significantly, the United States Supreme Court has likewise concluded that there is nothing in the Fourth Amendment that prohibits the police "from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded to them."  *United States v. Knotts* (1983), 460 U.S. 276, 282, 103 S.Ct. 1081, 75 L.Ed.2d 55.  For example, in *Dow Chem. Co. v. United States* (1986), 476 U.S. 227, 237–239, 106 S.Ct. 1819, 90 L.Ed.2d 226, the Supreme Court held that taking photographs of Dow's industrial facilities from navigable airspace using an aerial mapping camera was not prohibited by the Fourth Amendment.  Id. at 239, 106 S.Ct. 1819, 90 L.Ed.2d 226.  See, also, *Lopez v. United States* (1963), 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462.

{¶ 42}  We recognize the idea of a surveillance camera placed in a public restroom causes an initial feeling of uneasiness and discomfort.  However, we must also acknowledge that the camera placement in the present case limited the view of the police officers to the common areas of the restroom.  For example, the inside of the stalls were not photographed.  The cameras could record only actions that any member of the general public would be capable of viewing if he chose to enter the restroom.  The nature of public restrooms is such that anyone

can walk up alongside a person using the facilities and peer down to observe the other's bodily function.

{¶ 43} It could be argued that a person who was masturbating in a restroom might stop if another person were to walk in. However, this would permit that type of behavior to continue so long as no one was watching. It would also allow other types of behavior such as intercourse to occur in the common area so long as no one entered the restroom. The problem then arises as to who might walk into the restroom. An unaccompanied six-year-old boy could accidentally walk in on this type of behavior while his mother waited outside. It is for this reason, as we will further discuss, that actions that are likely to be viewed by and offend others, such as masturbating in a public restroom, are considered criminal.

{¶ 44} We concede that this type of continuous videotaping of a restroom may catch unsuspecting innocent people in the act of doing embarrassing things. However, that same person could be caught in the act by anyone who has quietly entered the restroom or who was finishing up in a neighboring stall. The fact remains that the common areas of public restrooms remain just that, common and public.

{¶ 45} Thus, after both examining the testimony given at the suppression hearing and reviewing the surveillance tape, we conclude that the trial court's findings are supported by competent, credible evidence. *State v. Winand* (1996), 116 Ohio App.3d 286, 288, 688 N.E.2d 9. Similarly, we conclude that the trial court met the applicable legal standard. *State v. Williams* (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141. Accordingly, the trial court properly denied Henry's motion to suppress, and his first assignment of error is meritless.

{¶ 46} As his second and third assignments of error each address the insufficiency of the evidence in this case, they will be addressed jointly. They respectively state:

{¶ 47} "The trial court errered [sic] when in [sic] overruled Motion for acquittal made at the close of the State's case on the basis that an element of the offense of public indecency, to wit, affront others, was not established."

{¶ 48} "The Appellant's right to due process under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 16 of the Ohio State Constitution were violated when the jury returned a verdict of guilty of public indecency absent proof of every element of the charge against him by sufficient, competent and credible evidence."

{¶ 49} In support of his claim that there was insufficient evidence to support a conviction of public indecency, Henry argues that the state failed to present any evidence at trial that his conduct offended anyone. Henry claims that the public-indecency statute requires an individual's conduct to be both likely to be viewed

*and* to affront others. Henry first claims that his motion for acquittal after the close of the state's case should have been granted. We disagree.

{¶ 50} Crim.R. 29(A), which establishes the parameters for the granting of a motion for acquittal, provides:

{¶ 51} "* * * The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."

{¶ 52} In determining whether a trial court has improperly rejected a motion for acquittal, the relevant inquiry is whether, after viewing evidence in a light most favorable to the prosecution, any rational trier of fact could have found essential elements of the crime proven beyond a reasonable doubt. *State v. Williams* (1996), 74 Ohio St.3d 569, 660 N.E.2d 724. Similarly, a conviction shall not be reversed on grounds of insufficient evidence unless the reviewing court holds that no rational fact-finder could have found the elements of the offense proven beyond a reasonable doubt. *State v. Goff* (1998), 82 Ohio St.3d 123, 138, 694 N.E.2d 916. In making this determination, the evidence must be viewed in a light most favorable to the state. Id. If reasonable minds could reach different conclusions, then the evidence is sufficient. See *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184.

{¶ 53} In the present case, Henry was convicted of violating R.C. 2907.09(A)(3). The relevant portion of the statute states as follows:

{¶ 54} "(A) No person shall recklessly do any of the following, under circumstances in which his or her conduct is likely to be viewed by and affront others, not members of his or her household:

{¶ 55} "* * *

{¶ 56} "(3) Engage in conduct that to an ordinary observer would appear to be sexual conduct or masturbation."

{¶ 57} Henry claims that this statute requires a defendant's conduct to actually offend others. Because the state offered no evidence regarding any person who both viewed Henry's conduct and was affronted by that conduct, Henry claims that that element of the offense was not established. Although it seems logical that to violate a "public indecency" statute the behavior should be public, the language of the statute does not mention "public" conduct. It prohibits recklessly engaging in sexual conduct where such conduct is likely to be viewed by and affront others. As set forth in ¶ 36, someone was in the restroom

at the time and could have seen Henry's conduct. Significantly, Henry conceded that it was a public restroom and anyone could walk in at any moment.

{¶ 58} Other courts have determined the statute does not require anyone to view the behavior, so long as it would be likely that the behavior would be viewed. In *State v. Johnson* (1987), 42 Ohio App.3d 81, 536 N.E.2d 648, the court commented that it was undisputed that the defendants were engaging in sexual activity in a public restroom stall. The court then reasoned:

{¶ 59} "The question to be determined is whether appellants were reckless in so doing and whether the toilet stall was a place where their conduct was likely to be viewed by and affront others. Due to the public, primitive, and relatively open nature of the pit toilet stall, we find that the state has shown sufficient requisite recklessness and also has shown the likelihood of appellants' being viewed by and affronting others." Id. at 84, 536 N.E.2d 648.

{¶ 60} Similarly, in *Cleveland v. Carson* (July 6, 1995), 8th Dist. Nos. 66084, 68193 and 68194, 1995 WL 396346, the Eighth District analyzed a city ordinance containing precisely the same language as the statute in dispute and came to the same conclusion as the *Johnson* court. "We find this to mean that the possibility of being discovered by others exists, not that others actually witnessed the exposure." Id. at 4. Again in *Cleveland v. Houston* (July 21, 1994), 8th Dist. No. 65897, 1994 WL 385982, the Eighth District held: "In order to sustain a conviction for public indecency, it matters not how many people actually view the conduct but whether such conduct would likely be viewed by and affront others. See, e.g., *State v. Johnson* (1987), 42 Ohio App.3d 81 [536 N.E.2d 648]; *State v. Laney* (1991), 61 Ohio Misc.2d 688 [583 N.E.2d 479]."

{¶ 61} In the more recent case of *Columbus v. Abdalla* (Apr. 30, 1998), 10th Dist. No. 97APC08–973, 1998 WL 211929, the defendant likewise challenged his conviction based upon the lack of proof that anyone witnessed and was offended by his conduct. In *Abdalla,* the defendant masturbated in a public park in front of an undercover police officer for five minutes. The court concluded:

{¶ 62} "[I]n the instant case, defendant's conduct was likely to be viewed by others since the park was open to the public and anyone could enter and leave the parking lot while defendant was standing outside [the officer's] car. Indeed, [the officer] testified that several cars entered and left the lot during the time defendant masturbated. [The officer] testified that he could see everything on the lot; thus, it is not unreasonable to presume that anyone else who entered the lot could also observe defendant's behavior. Nothing prevented others using the park facilities from approaching defendant during the time he was engaged in the masturbatory activity." Id. at 4.

{¶ 63}   Like the defendant in *Abdalla,* Henry also complains that no person was actually affronted by his behavior.   However, whether an activity would affront or offend others is not determined based upon reference to a specific person, but to "men of common intelligence."   *State v. Dorso* (1983), 4 Ohio St.3d 60, 63, 4 OBR 150, 446 N.E.2d 449.   The court in *Abdalla* found that C.C. 2307.09(A)(1), a city ordinance resembling R.C. 2907.09, does not require that a specific individual demonstrate that he was affronted.   "[W]hat 'affronts others' when observed by an ordinary observer does not depend on the sensitivities of the particular complainant, but, rather, the sensitivity of the person of common intelligence."   *State v. Lamey* (Nov. 27, 1984), 3d Dist. No. 14–83–12, 1984 WL 8114.

{¶ 64}   Thus, following the Eighth District's rationale, the standard to be applied when reviewing the evidence to support the element requiring the likelihood that defendant's behavior will affront others is an objective, rather than a subjective, standard.   Accordingly, the *Abdalla* court concluded that even if the officer had not been affronted, it was reasonable for the trial court to conclude that others using the park facilities were likely to be affronted by defendant's masturbatory activity.   Id. at 7.

{¶ 65}   Thus, Henry's argument that no other person viewed or was affronted by his behavior must fail.   His second and third assignments of error are meritless.

{¶ 66}   As his fourth and final assignment of error, Henry asserts:

{¶ 67}   "The Appellant's right to due process under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 16 of the Ohio State Constitution were violated when the jury returned a verdict of guilty of public indecency when that finding was against the manifest weight of the evidence."

{¶ 68}   In reviewing this assignment of error, it is helpful to first examine the differences between a sufficiency-of-the-evidence claim and a manifest-weight claim.   Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the fact-finder or whether the evidence is legally sufficient as a matter of law to support a conviction.   *State v. Smith* (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668.   In essence, sufficiency is a test of adequacy.   *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541.   Whether the evidence is legally sufficient to sustain a conviction is a question of law.   *Thompkins,* supra.   In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of

the crime proven beyond a reasonable doubt. *Smith,* supra, at 113, 684 N.E.2d 668.

{¶ 69} Alternatively, in determining whether a conviction is against the manifest weight of the evidence, a court of appeals must review the entire record, weigh the evidence and all reasonable inferences, and determine whether, in resolving conflicts in the evidence, the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See *Thompkins,* supra, 78 Ohio St.3d at 387, 678 N.E.2d 541. "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial. Id. at 390, 678 N.E.2d 541 (Cook, J., concurring). The state must first have presented sufficient evidence to support the conviction before a reviewing court can determine whether the state persuaded the fact-finder to convict. *Thompkins,* supra.

{¶ 70} In this context, Henry again argues that the state failed to present evidence that Henry's conduct actually offended anyone. However, as previously discussed, the state was not required to prove that anyone was actually offended by Henry's conduct. The state was simply required to prove that Henry's conduct was *likely* to be viewed by and affront others. Because we feel the jury did not lose its way in making that determination, we find that the verdict is not against the manifest weight of the evidence, and Henry's fourth assignment of error is meritless. Henry's conviction for public indecency is affirmed.

Judgment affirmed.

VUKOVICH, P.J., concurs separately.

GENE DONOFRIO, J., concurs in both opinions.

VUKOVICH, Presiding Judge, concurring:

{¶ 71} I find it ironic that a sign warns a motorist that he or she is entering an area of the roadway where speed limits are enforced by radar, but a motorist using a public restroom at a highway rest area has no warning that his or her visit might be the subject of video surveillance. The fact that the foregoing analysis of this court is correct as a matter of law does little to ameliorate the repugnancy of such a practice. Moreover, the fact that any police department could install video monitoring equipment in restrooms at its whim and without the necessity of obtaining approval from any court or legislative body further exacerbates the situation.

{¶ 72} I find little solace that the area under surveillance is confined to "open" areas. If a restroom appears empty, a person may reasonably act different from how he would act if other people were present. As I am unable to ignore the case law set forth by my colleagues, I concur in their opinion. However, I do so with reservations and could easily come to a different conclusion with any change in the facts presented in the appeal.