ACCELERATED DOCKET JOURNAL ENTRY AND OPINION
{¶ 1} This cause came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1, the trial court records and briefs of counsel.
 {¶ 2} The defendant/appellant, Eleare Kinney, appeals from the decision of the Bedford Municipal Court, which denied his motion to suppress a videotape that recorded an assault Kinney committed during a party at his home. After reviewing the record and applicable law, we affirm the decision of the trial court.
 {¶ 3} On December 25, 2002, Eleare Kinney held a family party at his home to celebrate Christmas. The party lasted into the early morning hours of December 26. Around 2:00 a.m., Kinney and the victim, LeShueon Freeman, were engaged in a game of pool, playing for money, in the basement of Kinney's home. During that pool game, Kinney and Freeman began to argue and a physical altercation ensued. A video camcorder had been set up on a tripod located near the pool table and was recording the party.
 {¶ 4} The following versions of how the fight began are in dispute. Kinney claims that Freeman became agitated because he was losing the game; Freeman slammed his pool stick onto the table and began cursing at Kinney. Kinney stated he asked Freeman to leave; Freeman then hit Kinney in the arm with the pool stick. Kinney claims that he then punched Freeman in the face only to defend himself.
 {¶ 5} Freeman, on the other hand, claims that Kinney became agitated during the pool game and began cursing at him and calling him names. Freeman claims he told Kinney he was done playing pool and attempted to leave the basement. Freeman stated that Kinney blocked him from leaving the area and attacked him as he tried to step away. Freeman claims that Kinney punched him numerous times in the face.
 {¶ 6} The Bedford Heights police were called to Kinney's home, but no arrests were made. Each man claimed that he had been assaulted first by the other man. The police instructed both Kinney and Freeman to come to the police station the next day and file statements about the incident. At the time, the police were unaware of the video camcorder, which happened to record the incident. Freeman went to the hospital and sought medical treatment for his injuries; Kinney was unharmed.
 {¶ 7} The next day, both Kinney and Freeman went to the police station in order to file their statements and complaints for assault. Kinney and his cousin filed reports claiming that Freeman attacked Kinney first with the pool stick and Kinney hit Freeman in self defense. Freeman filed an incident report claiming that Kinney was the aggressor and attacker. However, along with his written statement, Freeman also supplied the Bedford Heights police with a partial copy of the videotape from the camcorder at the party and told them it had recorded Kinney assaulting him.
 {¶ 8} On December 27, 2002, after reviewing the copied videotape, without a warrant, the Bedford Heights police charged Kinney with assault, in violation of R.C. 2903.13. The police found that the version of the incident reported by Kinney and his witness differed from the events that actually occurred on the videotape.[1] When contacted by the police, Kinney told them the videotape belonged to him, and Freeman must have stolen it from his home. Freeman claimed that an anonymous person left the original videotape in his mailbox,[2] and from the original videotape, Freeman made the copy that he provided to the police. The Bedford Heights police stated that had it not been for the videotaped evidence, Kinney would never have been charged with assault.
 {¶ 9} On May 2, 2003, Kinney filed a motion with the Bedford Municipal Court seeking to suppress the videotape and its contents. Kinney claimed the videotape was obtained through illegal activity and is stolen property; therefore, the state cannot use the videotape as evidence. Kinney also claimed that the Bedford Heights police violated his constitutional right to be free from unreasonable searches and seizures by viewing the videotape without a warrant. Kinney argued that he had a reasonable expectation of privacy in the content of the videotape, and the police could not view its contents without a search warrant.
 {¶ 10} On June 11, 2003, the trial court denied Kinney's motion to suppress and held that he did not have a reasonable expectation of privacy in the contents of the videotape. The trial court stated the videotape in question was similar to a surveillance tape that depicts events in which the people at the event have no reasonable expectation of privacy; therefore, the police may view the videotape without first obtaining a warrant. The court further reasoned the police could use the tape against Kinney because it was obtained through a third party, without police action or suggestion.
 {¶ 11} On September 23, 2003, Kinney pleaded no contest to the amended charge of attempted assault, in violation of R.C.2923.02. Kinney was found guilty and sentenced to 60 days in jail, 45 of which were suspended; to 9 months of active probation; and he was ordered to pay a $500 fine. Kinney was also ordered to attend anger management classes. Execution of sentence was stayed pending this appeal filed October 14, 2003.
 {¶ 12} The appellant presents one assignment of error for review:
 {¶ 13} "The trial court erred by overruling the defendant's motion to suppress the evidence recovered from the illegal search of the defendant/appellant's videotape."
 {¶ 14} The appellant claims the videotape depicting his assault on the victim, Freeman, is private property containing images of a private family party; therefore, the appellant has a "high expectation of privacy" as to its contents, and the Bedford Heights police should not have viewed the videotape without first obtaining a search warrant.
 {¶ 15} "[T]he standard of review with respect to motions tosuppress is whether the trial court's findings are supported by competent, credible evidence. See State v. Winand (1996),116 Ohio App.3d 286, 688 N.E.2d 9, citing Tallmadge v. McCoy
(1994), 96 Ohio App.3d 604, 645 N.E.2d 802. * * * This is the appropriate standard because `in a hearing on a motion tosuppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' State v. Hopfer
(1996), 112 Ohio App.3d 521, 679 N.E.2d 321. However, once we accept those facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard. State v. Williams (1993), 86 Ohio App.3d 37, 41,619 N.E.2d 1141." State v. Lloyd (1998), 126 Ohio App.3d 95,100-101, 709 N.E.2d 913; see, also, State v. Henry,151 Ohio App.3d 128, 2002-Ohio-7180, 783 N.E.2d 609.
 {¶ 16} The Fourth Amendment provides, "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated and no warrants shall issue, but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." The Fourth Amendment serves to protect an interest in which an individual has a reasonable, justifiable or legitimate expectation of privacy that has been invaded by governmental action. Katz v.United States (1967), 389 U.S. 347, 88 S.Ct. 507,19 L.Ed.2d 576.
 {¶ 17} To determine whether an expectation of privacy exists, the court must first determine whether the individual, by his conduct, has exhibited an actual, subjective expectation of privacy; in other words, did the individual seek to preserve something as private. Next, the court must determine whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable, legitimate and justifiable under the circumstances. State of Ohio v. Henry
(2002), 151 Ohio App.3d 128, 133-134, 2002-Ohio-7180,783 N.E.2d 609.
 {¶ 18} The United States may retain for use as evidence in the criminal prosecution of their owner, any incriminating documents which are turned over to it by a private citizen who procured them, without the participation or knowledge of any government official. Burdeau v. McDowell (1921), 256 U.S. 465,41 S.Ct. 574, 65 L.Ed. 1048. A search or seizure conducted by a private citizen is not a "search or seizure" within the meaning of the Fourth Amendment. Barnes v. United States (1967),373 F.2d 517. For a search by a private person to trigger the Fourth Amendment protection, the government must have known about the search in advance, and the private party must be acting for law enforcement purposes. United States v. Pierce (5th Cir. 1990), 893 F.2d 669.
 {¶ 19} The appellant argues that Walter v. United States
(1980), 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410, is directly on point and dispositive of the issue presented. We disagree. InWalter, the United States Supreme Court was divided on the question of whether FBI agents, without a warrant, could view a package of 8 millimeter films depicting homosexual acts when the package was mistakenly delivered to a different recipient by a private carrier and subsequently turned over to the FBI. The recipient had opened the package and looked at the graphic labels on the films, but did not view the films. From the labeling and packaging, it was apparent to both the recipient and to the FBI that the 8 millimeter films contained images depicting homosexual acts. The owner of the package was subsequently prosecuted and convicted; the homosexual films were used as evidence against him in court.
 {¶ 20} In suppressing the use of the films as evidence, Justice Stevens, joined by Justice Stewart, concluded that the unauthorized exhibition of the films by the FBI constituted an unreasonable invasion of their owner's constitutionally protected interest in privacy. The opinion further stated that an officer's authority to possess a package is distinct from his authority to examine its contents. A partial invasion of privacy cannot automatically justify a total invasion. Hence, although the FBI agents could lawfully receive the films, they could not view the contents of the film without a warrant even though a private person, not covered by the Fourth Amendment, had initially opened the package. The scope of the FBI search was limited by the terms of its authorization, the FBI may not exceed the scope of the private search unless it has the right to make an independent search, e.g., through a search warrant.
 {¶ 21} Justice White, joined by Justice Brennan, concurred in part and disagreed with the footnote of Justice Stevens that left open the question of whether the government viewing of the films would have infringed upon any Fourth Amendment interests if the private parties had viewed the films before turning them over to the government. Justice Marshall concurred in judgment without opinion. Justice Blackmun's dissent, joined by Chief Justice Burger, Justice Powell, and Justice Rehnquist, argued that by the time the FBI received the films, the petitioners had no remaining expectation of privacy in their contents.
 {¶ 22} Absent any police action, this court has held that when a third party obtains and views the contents of a videotape which depicts a criminal act, and subsequently turns the tape over to the police, the police may view the same content to the extent viewed by the third party without having to obtain a search warrant. State v. Belcastro (May 23, 2002), Cuyahoga App. No. 77443. In Belcastro, the defendant was videotaping a nude seventeen-year-old female engaging in sexual acts with a nineteen-year-old female. The nineteen-year-old female's boyfriend discovered the videotape at the defendant's home and viewed the contents. The boyfriend then took the videotape, without the defendant's knowledge, and turned it over to the Euclid police. The boyfriend told the police that the videotape contained nude images of a minor engaged in sexual acts. The police viewed the videotape without a warrant. The defendant was later charged and convicted for pandering and use of a minor in nudity-oriented material.
 {¶ 23} On appeal, the appellant claimed that his counsel was ineffective for failing to file a motion to suppress the videotape evidence that was viewed by the police without a warrant. In affirming the defendant's conviction, this court held that the facts of the case placed it directly within the "open question" discussed by Justice Stevens in Walter; whether the government would have to obtain a search warrant if the third party had viewed the films first. This court held that, because the boyfriend had viewed the videotape, he frustrated the defendant's expectation of privacy allowing the police to view the videotape to the same extent as the boyfriend without obtaining a warrant.
 {¶ 24} In the instant matter, we find the appellant's assignment of error without merit. First, the police were in lawful possession of the videotape because it was given to them by the victim, a third party. The police did not encourage, advise, or participate in obtaining the videotape illegally. There is no indication that the victim was acting as an agent for the police. For the purposes of the Fourth Amendment, how the victim came into possession of the videotape is irrelevant so long as there was no police action. The Fourth Amendment does not apply to private citizen searches and seizures; therefore, the videotape could be used as evidence against the defendant in court.
 {¶ 25} Next, even assuming that the appellant had a reasonable expectation of privacy in the images contained on the videotape, the police could view the tape without a warrant because it was previously viewed by a third party. The victim, Freeman, came to the police station and filed a statement concerning the assault. He then told the police that the videotape he brought with him recorded the appellant assaulting him. Freeman must have viewed the videotape in question because the videotape he gave to the police was a copy of the original. The copy presented to the police only depicted the appellant assaulting Freeman; the rest of the party events were edited out. In order to edit a videotape this way, we can only conclude that Freeman must have viewed nearly the entire contents of the tape or, at a minimum, the assault.
 {¶ 26} Consistent with the holding of Walter andBelcastro, supra, we hold that the victim viewing the videotape destroyed the appellant's reasonable expectation of privacy as to the images contained on the tape; therefore, the police could view the videotape without obtaining a search warrant. The appellant's assignment of error is overruled.
 {¶ 27} The judgment is affirmed.
Judgment affirmed.
Dyke, P.J., and Calabrese, Jr., J., Concur.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Bedford Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] The police did not file any additional charges against Kinney or his witness for making false statements as to what actually occurred in Kinney's basement, as contradicted by the videotape Freeman provided.
[2] Freeman later turned over the original videotape from the camcorder in Kinney's basement to the Bedford Heights police.