JOURNAL ENTRY AND OPINION
{¶ 1} The city of Euclid appeals from the decision of the Euclid Municipal Court, which granted Gregory Favors' motion to suppress two packets of marijuana that were found during a weapons search. After reviewing the record and for the reasons set forth below, we affirm the ruling of the municipal court.
 {¶ 2} On November 6, 2003, Favors was charged with one count of drug abuse, to wit, possession of marijuana, in violation of section 513.03 of the Euclid Codified Ordinances, a misdemeanor of the first degree. On November 13, 2003, Favors was appointed trial counsel and pleaded not guilty to the charge. On February 19, 2004, Favors filed a motion to suppress evidence of the marijuana claiming it was obtained during an illegal search of his person.
 {¶ 3} The following facts were adduced at the suppression hearing. On October 23, 2003, Patrolman Paul Doyle, a thirteen-year veteran of the Euclid Police Department, was on patrol in his zone car. At about 3:10 p.m., Patrolman Doyle approached the intersection of East 232nd Street and Ivan Avenue. He observed a man standing near the corner who appeared to be waiting for someone. He stated that the man appeared to be very cold due to the weather conditions and the very thin jacket that he was wearing.
 {¶ 4} Patrolman Doyle testified that he was aware of disputes arising between feuding neighbors who lived near the corner and wondered if the man could be one of those neighbors. The patrolman decided to approach the man and question him. He pulled up next to the man and spoke to him through the passenger window of his zone car. He asked the man for his name and address, which he then ran through his police computer. Doyle's computer search returned information that the man's name was Gregory Favors, however, the home address provided by Favors turned out to be fictitious.
 {¶ 5} Patrolman Doyle testified that he asked Favors why he was standing on the corner. Favors replied he was waiting for a friend of his, who lived in a house directly behind where he was standing, to come outside. Doyle then asked Favors why he was waiting outside in the cold when he could be waiting inside his friend's house. Doyle testified that Favors then told him that he was now waiting for a different friend to pick him up who lived on the next block.
 {¶ 6} Patrolman Doyle testified that Favors, with his hands in his pockets, angled his body toward the zone car, and he saw what he believed to be a gun barrel pointed at him through Favors' jacket. Doyle testified that the gun was in Favors' right coat pocket.
 {¶ 7} Doyle immediately exited his zone car, drew his weapon, and ordered Favors to lay face down on the ground. Doyle then handcuffed Favors, and while Favors was still laying face down, reached into his right coat pocket to retrieve the gun. When the right pocket turned out to be empty, Doyle reached into Favors left coat pocket where he found a bag of marijuana. Doyle continued his search of Favors and reached into Favors' pants pocket, where he found another small bag of marijuana. No firearm was found on Favors' person. Patrolman Doyle testified that Favors must have been making a gun shape with his fingers while his hand was inside his coat pocket.
 {¶ 8} On February 20, 2004, the municipal court granted Favors' motion to suppress holding that the packages of marijuana were obtained as a result of an illegal search. The facts from the suppression hearing arose solely from the testimony of Patrolman Doyle. On February 25, 2004, the city of Euclid (hereinafter "appellant") filed this timely appeal presenting one assignment of error for review:
 {¶ 9} "The trial court erred in granting the Defendant-Appellee's motion to suppress."
 {¶ 10} In its sole assignment of error, the appellant claims the trial court erred in granting Favors' motion to suppress for three reasons. First, the appellant claims Officer Doyle could conduct a limited search of Favors' jacket pockets because he believed that Favors was concealing a weapon. Second, the appellant claims that the doctrine of inevitable discovery would apply because Officer Doyle had probable cause to arrest Favors for aggravated menacing, menacing, or carrying a concealed weapon. The appellant argues that discovery of both packets of marijuana would have occurred in a search incident to arrest. Finally, the appellant argues that Officer Doyle would have discovered the packets of marijuana under the "plain feel" doctrine. The appellant claims that Officer Doyle, having made many drug arrests in the past, would have known that marijuana was contained in the packets simply by touching the outside of Favors' jacket and pants pockets. We disagree with all of the appellant's assertions.
 {¶ 11} "[T]he standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. See State v. Winand (1996),116 Ohio App.3d 286, 688 N.E.2d 9, citing Tallmadge v. McCoy
(1994), 96 Ohio App.3d 604, 645 N.E.2d 802. * * * This is the appropriate standard because `in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' State v. Hopfer
(1996), 112 Ohio App.3d 521, 679 N.E.2d 321. However, once we accept those facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard. State v. Williams (1993), 86 Ohio App.3d 37, 41,619 N.E.2d 1141." State v. Lloyd (1998), 126 Ohio App.3d 95,100-101, 709 N.E.2d 913; see, also, State v. Henry,151 Ohio App.3d 128, 2002-Ohio-7180, 783 N.E.2d 609.
 {¶ 12} When deciding whether a temporary stop is permissible under Terry v. Ohio (1967), 392 U.S. 1, 20 L.Ed.2d 889,88 S.Ct. 1868, we look to see whether the police had a reasonable suspicion that criminal activity was occurring. See Illinois v.Wardlow (2000), 528 U.S. 119, 123, 145 L.Ed.2d 570,120 S.Ct. 673. The purpose of a Terry stop is not to accuse, but to investigate. Facts which might be given an innocent construction will support the decision to detain an individual momentarily for questioning, so long as one may rationally infer from the totality of the circumstances that the person may be involved in criminal activity. United States v. Cortez (1981),449 U.S. 411, 417, 66 L.Ed.2d 621, 101 S.Ct. 690. A police officer must be able to point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant that intrusion. State v. Bobo (1988),37 Ohio St.3d 177, 524 N.E.2d 489. An area's reputation for criminal activity is an articulable fact that is part of the totality of the circumstances surrounding a stop. Id.; see, also, State v.Brumfield, Hamilton App. No. C-030389, 2003-Ohio-7102.
 {¶ 13} Under the totality of the circumstances approach, police officers are permitted to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.'" Cortez, 449 U.S. at 418. Thus, a court reviewing the officer's reasonable suspicion determination must give due weight to the officer's trained eye and experience and view the evidence through the eyes of those in law enforcement. Id.; see, also, State v. Andrews (1991),57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271.
 {¶ 14} The protective pat-down search under Terry is limited in scope to this protective purpose and cannot be employed by the searching officer to search for evidence of crime. Obviously, once the officer determines from his sense of touch that an object is not a weapon, the pat-down frisk must stop. The officer, having satisfied himself or herself that the suspect has no weapon, is not justified in employing Terry as a pretext for a search for contraband.
 {¶ 15} In the instant matter, Patrolman Doyle testified that he stopped to question Favors because the neighbors who lived near the corners of East 232nd Street and Ivan Avenue had ongoing problems. Doyle approached Favors and asked him for his name and address. Doyle then continued to question Favors as to why he was standing near the corner.
 {¶ 16} Patrolman Doyle testified that when Favors turned his body parallel to the police vehicle, he thought he saw the barrel of a gun pointed at him from Favors' right jacket pocket. He exited his vehicle and ordered Favors to lay flat on the ground while he handcuffed him. Doyle then testified that he reached into Favors' right pocket and failed to find a gun; he then reached inside the left pocket, where he found a packet of marijuana. Doyle further stated he then searched inside Favors' pants pocket, where he found another packet of marijuana.
 {¶ 17} A gun was never found on Favors' person. Patrolman Doyle opined that the gun he saw must have been Favors making a gun shape with his fingers from inside his coat pocket.
 {¶ 18} Based on the totality of the circumstances, we find that Patrolman Doyle has failed to present any articulable facts which would warrant the initial investigatory stop and subsequent intrusion. A police officer is not obliged to seize every person he sees or questions on the street. Sibron v. New York (1968),392 U.S. 40, 20 L.Ed.2d 917, 88 S.Ct. 1889.
 {¶ 19} The area of Euclid where Favors was stopped and questioned is not known as a high crime area. There was also no testimony by Patrolman Doyle that he had a reasonable suspicion that Favors was engaged in any criminal activity, i.e selling drugs or casing a house; Favors was just standing on a sidewalk in the middle of the afternoon waiting for a friend to pick him up.
 {¶ 20} Furthermore, the pat-down search for weapons went beyond the scope of a Terry stop. Patrolman Doyle reached directly inside Favors' pockets instead of conducting a pat-down search of his external clothing. Doyle testified that Favors was wearing a thin jacket. Surely, the presence of a firearm could have been ascertained by an external pat-down of Favors pockets, especially since he had been handcuffed and was lying face down on the sidewalk. A sandwich bag of marijuana cannot be ascertained by an external pat down of a suspect's clothing, nor can it be confused with being a firearm. Police may only seize nonthreatening contraband when its incriminating nature is "immediately apparent" to the searching officer through the sense of touch. Minnesota v. Dickerson (1993), 508 U.S. 366,124 L.Ed. 2d 334, 113 S.Ct. 2130.
 {¶ 21} Because Patrolman Doyle lacked a reasonable suspicion to initially stop and question Favors and went beyond the scope of the pat-down search for weapons by reaching inside Favors' pockets, we find that the trial court's decision to grant Favors' motion to suppress the marijuana packets is supported by competent and credible evidence. The illegal search of Favors' person renders both packets of marijuana fruits of the poisonous tree. The appellant's sole assignment of error is overruled.
Judgement affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., concurs;
 Corrigan, A.J., concurs in judgment only.