JOURNAL ENTRY AND OPINION
{¶ 1} Clarence Perry appeals from his convictions for possession of drugs, drug trafficking, and possession of criminal tools following a jury trial. He claims the trial court erred by failing to grant his motion to suppress 34 rocks of crack cocaine that were found in his vehicle by the police. He also claims he should be afforded a new trial based upon multiple errors that occurred during his trial that were committed by the trial court and the prosecutor. Lastly, Perry argues that the prison sentence imposed by the trial court was erroneous and contrary to law. After reviewing the record and the applicable law, we affirm Perry's criminal convictions and subsequent prison sentence.
 {¶ 2} On July 30, 2003, around 11:00 p.m., Detective David Sims of the Cleveland Police Department received an anonymous tip from a resident that Clarence Perry was selling drugs again on East 66th at Belvidere. The Detective was familiar with Perry; he had previously arrested him and found over 100 rocks of crack cocaine in his possession. Detective Sims and Sergeant John Moran proceeded to the area in question, parked their vehicle up the street from where Perry was standing and began surveillance.
 {¶ 3} Through a pair of binoculars, Detective Sims observed Perry standing with two other males. Sims watched as a third person approached the group and engaged them in conversation. After the conversation, Perry went to the rear, passenger-side door of his 1996 gold-colored Buick Roadmaster, which was parked on the street, and retrieved an item. Perry gave the item to a heavy-set fellow, later identified as Cyril Baker, and Baker made a hand-tohand transaction with the third person. Based on his experience as a police officer, Sims believed a drug transaction had just occurred. Sims observed another similar transaction; he then called in an undercover police detective, Kimberly Rudolph, to attempt a controlled drug buy from Perry and Baker.
 {¶ 4} Detective Rudolph arrived within five minutes and approached Perry and Baker in her undercover vehicle. Rudolph asked Baker "if she could get a 20," which is a way of asking in street terminology whether she could buy a rock of crack cocaine worth $20. Baker told Rudolph to wait and advised he would go and check. Detective Rudolph handed Baker a $20 bill, which had been marked and photocopied, and watched as Baker approached Perry and began talking. Perry then approached Rudolph's vehicle to get a good look at her face. Perry asked Rudolph to show her "tin badge," to which Rudolph replied she did not have one. Perry stated to Baker and Rudolph that he knew Rudolph was a police officer and that she had previously arrested him. Perry walked away from Rudolph's vehicle.
 {¶ 5} Baker spoke with Rudolph again, and Rudolph convinced Baker that she was not a police officer. Baker then spoke with Perry again and, following this second conversation, Perry went to the rear, passenger-side door of his Buick Roadmaster, retrieved an item, and handed it to Baker. Detective Rudolph heard Perry state to Baker that selling to her "did not feel right."
 {¶ 6} Baker gave Rudolph the item he obtained from Perry, which was later confirmed to be crack cocaine after laboratory testing. Baker then asked Rudolph for another $5. Baker turned back towards Perry to reconfirm the price of the crack rock; Perry replied, "at least $25." Rudolph handed Baker another marked and photocopied $20 bill and waited for Baker to get her change.
 {¶ 7} In the meantime, another male appeared, later identified as Dan Belcher, who told Perry, Baker, and another male named Johnny Scott that the police were watching them from up the street. Perry and Scott got into the Buick Roadmaster and drove away. Baker fled the area on foot. As the group was dispersing, Rudolph called Detective Sims and stated she had purchased drugs from Perry.
 {¶ 8} Detective Sims followed Perry's vehicle, losing sight of it for about a minute after it turned the corner onto Hough Avenue. Sims sighted Perry's vehicle parked in a lot on Hough next to a residence. Perry and Scott were no longer in the vehicle, so Detective Sims set up surveillance on the vehicle and the house next to the lot. After about fifteen minutes, Sims observed Perry and Scott exiting the house and walking towards the street. Detective Sims and Sergeant Moran apprehended and arrested both Perry and Scott. Sims testified that, after the appellant was arrested, he asked him where his drugs were, to which the appellant replied, "Come on Sims, the last time I told you where my drugs was, you took all my stuff and kept my truck." Detective Rudolph was called to the scene of the arrest and identified Perry as one of the men who had sold her crack cocaine.
 {¶ 9} Sims believed the gold Buick Roadmaster belonged to Perry because he had seen him driving it before. The license plates on the vehicle were run through the police computer, and the computer search confirmed that the vehicle belonged to Perry. Perry's vehicle was inventoried by Detective Sims and Sergeant Moran before it was towed to the police impound lot, pursuant to Cleveland Police Department Procedures. Recovered from the vehicle were 34 individually wrapped white rocks, later confirmed by laboratory testing to be crack cocaine and weighing 14.22 grams. The rocks were inside a small black pouch that was imprinted on one side with the words "I Love You Jesus" and a red heart. The pouch was found in the rear passenger seat area of the vehicle.
 {¶ 10} When the appellant arrived at the police station, his personal effects were inventoried at the booking window; one of the marked and photocopied $20 bills was found in his possession, along with various denominations of cash totaling $857. Cyril Baker, whose identity was unknown to the police at the time of Perry's arrest, escaped apprehension.
 {¶ 11} On October 7, 2003, the Grand Jury indicted Perry on four criminal counts. Count one charged possession of drugs, specifically, crack cocaine in an amount exceeding ten grams, in violation of R.C.2925.11, a felony of the second degree. Counts two and three charged drug trafficking, in violation of R.C. 2925.03. Count two, a fifth degree felony, charged Perry with trafficking a controlled substance in an amount less than one gram, while count three, a second degree felony, charged him with offering to sell a controlled substance in an amount exceeding ten grams but less than twenty-five. Count four charged possession of criminal tools, in violation of R.C. 2923.24, a felony of the fifth degree. Perry pleaded not guilty to all counts.
 {¶ 12} Perry filed a motion to suppress the 34 crack rocks that were found in his vehicle claiming the search of his vehicle was illegal and without cause. On January 15, 2004, the trial court conducted a suppression hearing and overruled Perry's motion holding that, in view of Perry's arrest, an inventory of Perry's car was proper because the vehicle was subject to forfeiture.
 {¶ 13} On February 23, 2004, a jury trial commenced. The prosecution introduced the testimony of Detective Sims, Detective Moran, Detective Rudolph, and Tracy Kramer, a scientific examiner for the Cleveland Police Department, to prove the state's case against Perry. Perry testified in his own defense, along with introducing the testimony of Johnny Scott and Cyril Baker. On February 25th, Perry was found guilty on all counts.
 {¶ 14} On the same day, the trial court sentenced Perry to six years on count one, six months on count two, six years on count three, and six months on count four. All sentences were ordered to run concurrently for a total of six years incarceration. Perry's driver's license was suspended for five years, and he was ordered to pay a $5,000 fine.
 {¶ 15} Perry brings this timely appeal alleging eleven assignments of error for review. Some of the arguments will be addressed together since they are interrelated.
 Motion to Suppress — Unconstitutional Search and Seizure {¶ 16} "I. Defendant was denied due process of law when the court overruled defendant's motion to suppress."
 {¶ 17} In his first argument, the appellant claims the trial court erred by not granting his motion to suppress the 34 rocks of crack cocaine found in his vehicle. Only Detective Sims and the appellant testified at the suppression hearing.
 {¶ 18} The appellant claims the warrantless search of his vehicle was illegal because 15 minutes had passed between the time he was observed selling drugs at East 66th and Belvidere and the time the vehicle was searched in the lot on Hough. Hence, this passage of time required the police to obtain a warrant to search the vehicle. Appellant further argues that the search of his person, which revealed the marked $20 bill, was also illegal for these same reasons.
 {¶ 19} "[T]he standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. See State v. Winand (1996), 116 Ohio App.3d 286,688 N.E.2d 9, citing Tallmadge v. McCoy (1994), 96 Ohio App.3d 604,645 N.E.2d 802. * * * This is the appropriate standard because `in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' State v. Hopfer
(1996), 112 Ohio App.3d 521, 679 N.E.2d 321. However, once we accept those facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard. State v. Williams (1993),86 Ohio App.3d 37, 41, 619 N.E.2d 1141." State v. Lloyd (1998),126 Ohio App.3d 95, 100-101, 709 N.E.2d 913; see, also, State v.Henry, 151 Ohio App.3d 128, 2002-Ohio-7180, 783 N.E.2d 609.
 {¶ 20} The Fourth Amendment to the United States Constitution, as applied to the individual states through the Fourteenth Amendment, prohibits the government from conducting unreasonable searches and seizures of persons or their property. Exceptions exist that allow warrantless searches of vehicles under certain circumstances. First, if a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the wellestablished automobile exception to the warrant requirement. State v. Moore (2000), 90 Ohio St.3d 47, 51, 734 N.E.2d 804. A police officer may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband or other evidence that is subject to seizure, and exigent circumstances necessitate a search or seizure. Chambers v. Maroney (1970), 399 U.S. 42,51, 428, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419; Carroll v. United States
(1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. The mobility of automobiles often creates exigent circumstances and is the traditional justification for this exception to the Fourth Amendment's warrant requirement. State v. Aliciea (Oct. 18, 2001), Cuyahoga App. No. 78940.
 {¶ 21} Probable cause has been defined as "a reasonable ground for belief of guilt." Id., quoting Carroll v. United States (1925),267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. "Probable cause must be based upon objective facts that would justify the issuance of a warrant by a magistrate." State v. Welch (1985), 18 Ohio St.3d 88, 92, 480 N.E.2d 384. Additionally, probable cause is determined under the totality of the circumstances. State v. Miller (1993), 91 Ohio App.3d 270, 273,632 N.E.2d 569, citing Illinois v. Gates (1983), 462 U.S. 213,103 S.Ct. 2317, 76 L.Ed.2d 527.
 {¶ 22} Additionally, pursuant to New York v. Belton (1981),453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, the police may search a vehicle incident to a lawful arrest.
 {¶ 23} The burden of proof in a warrantless search rests with the prosecution to prove, by a preponderance of the evidence, the legality of the search. Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507,19 L.Ed.2d 576. The appellant claims the only reason he was at East 66th and Belvidere at 11:30 p.m. was to have his vehicle repaired by Johnny Scott. He claims he was not helping, nor was he associated with the heavy-set fellow who was selling drugs to Detective Rudolph. The appellant further argues that the crack rocks found in his vehicle must have been planted by the police.
 {¶ 24} Despite appellant's contentions, we find that probable cause existed to arrest the appellant and search his vehicle without a warrant more than fifteen minutes after the controlled drug buy occurred. The appellant was observed by Detective Sims committing a felony, i.e, selling a crack rock to an undercover police officer; therefore, a warrant was not needed in order to arrest the appellant. He was patted down for weapons, and the marked $20 bill was not found until his items were inventoried at the police booking window; therefore, an illegal search of the appellant's person did not occur.
 {¶ 25} The appellant was lawfully arrested for selling crack cocaine to an undercover police officer. Detective Sims and Detective Rudolph observed the appellant retrieving items that were later confirmed to be crack cocaine from the rear, passenger side of his vehicle. Detective Sims had probable cause to search the appellant's vehicle knowing it contained contraband. Moreover, the vehicle was subject to forfeiture for use as a criminal tool and would have been inventoried and impounded by the police following the appellant's arrest. Based on these facts, the inventory search of the appellant's vehicle was proper. City of Oakwoodv. Juliano (Dec. 16, 1999), Cuyahoga App. No. 75160.
 {¶ 26} We find that the trial court's denial of the appellant's motion to suppress was supported by competent and credible evidence, and his first assignment of error is overruled.
 Admission of Evidence {¶ 27} "II. Defendant was denied his constitutional rights to present a defense when the court struck the testimony of cyril baker and refused to admit it as a declaration against interest."
 {¶ 28} "III. Defendant was denied due process of law when the court and/or prosecutor refused to grant immunity to cyril baker."
 {¶ 29} "IV. Defendant was denied due process of law when he was required to testify before the appearance of a defense witness could be secured."
 {¶ 30} In his second, third, and fourth arguments, the appellant claims the trial court erred when ruling on evidentiary issues.
 {¶ 31} The admission or exclusion of evidence lies within the trial court's sound discretion and will not be disturbed absent an abuse of discretion. State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343. To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Clark (1994),71 Ohio St.3d 466, 470, 644 N.E.2d 331; State v. Moreland (1990),50 Ohio St.3d 58, 61, 552 N.E.2d 894; State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144. In order to create an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Nakoff v. Fairview Gen.Hosp. (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1.
 {¶ 32} We first address the appellant's second argument of whether the trial court abused its discretion in striking the testimony of Cyril Baker and not allowing his testimony in as a statement against interest under Evid.R. 803(B)(3).
 {¶ 33} Baker was called as a defense witness and basically testified that he was the person who sold crack cocaine to Detective Rudolph. Baker testified that he got the drugs from a guy named "Slick," who was working around the corner from where everyone was standing. Baker stated the appellant did not give him any drugs to sell and was there trying to get his car fixed. Baker stated when he heard the police were watching them, he ran away on foot.
 {¶ 34} At this point, the trial court stopped Baker's testimony and asked both attorneys to approach. Baker was appointed an attorney and informed of his constitutional right against self incrimination. The prosecutor requested that Baker be arrested and charged "as the missing link in the case." Baker refused to testify any further and pled theFifth Amendment. The prosecutor moved the trial court to strike Baker's testimony because he could no longer cross-examine him. The trial court struck Baker's testimony, prompting defense counsel to request that his testimony come in as a statement against interest or, in the alternative, to grant Baker immunity from prosecution in order to have him testify. Both of defense counsel's requests were denied by the trial court.
 {¶ 35} Hearsay evidence is not admissible "unless subject to a relevant exception." State v. Steffen (1987), 31 Ohio St.3d 111, 119,509 N.E.2d 383, certiorari denied (1988), 485 U.S. 916, 108 S.Ct. 1089,99 L.Ed.2d 250. Evid.R. 804(B)(3) provides an exception for statements against interest when the declarant is unavailable to testify as a witness:
 {¶ 36} "Statement against interest. A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."
 {¶ 37} In order for Baker's "out-of-court statements," i.e., his stricken trial testimony, to qualify as an exception to the hearsay rule under Evid.R. 804(B)(3), it must be established that (1) Baker was unavailable as a witness, (2) the statements were against Baker's interest and tended to subject Baker to criminal liability, and (3) corroborating circumstances indicate the trustworthiness of the statements. All three elements must be present in order for statements against interest to be admissible under Evid.R. 804(B)(3). See, e.g.,State v. Gilliam (1994), 70 Ohio St.3d 17, 20, 635 N.E.2d 1242, certiorari denied (1995) U.S., 115 S.Ct. 750.
 {¶ 38} There is no question that Baker was unavailable as a witness because he had asserted his Fifth Amendment right against self incrimination. A witness who invokes his privilege against self incrimination is considered "unavailable" under Rule 804(A). State v.Sumlin (1994), 69 Ohio St.3d 105, 630 N.E.2d 681. Therefore, the first element of Evid.R. 804(B)(3) is satisfied.
 {¶ 39} With respect to the second requirement of Evid.R. 804(B)(3), we find that Baker testified without actually knowing that the statements he was making were against his penal interests and subjected him to criminal liability. When the trial court appointed an attorney to represent Baker, he decided not to continue testifying and to plead theFifth Amendment. When Baker pled the Fifth Amendment, it was an indication that the statements he made were false — he was no longer willing to accept total responsibility for the drug dealing that the appellant was accused of, now knowing that he could go to prison for his statements. Had Baker continued to testify knowing his testimony was subjecting him to prosecution, it would have been an indication of the truthfulness of his testimony.
 {¶ 40} Furthermore, the trial court inquired whether Baker had reviewed his testimony with defense counsel prior to testifying, to which Baker replied, "yes." Thus, defense counsel allowed Baker to take the witness stand knowing that he would incriminate himself. It is well accepted law that a party is not permitted to complain of an error which said party invited or induced the trial court to make. State v. Kollar
(1915), 93 Ohio St. 89, 112 N.E. 196. The appellant and his counsel both knew who Baker was and that Baker had escaped apprehension by the police, yet they failed to turn him in to the police before appellant's trial. We refuse to allow the appellant to benefit from an error which he invited.
 {¶ 41} Finally, pursuant to Evid.R. 804(B)(3), there must be corroborating circumstances that clearly indicate the trustworthiness of the statements sought to be admitted. "[A] bare showing of some extent of corroboration is not enough. Instead, the rule contemplates a demonstration of corroborating circumstances * * * which, on balance, persuade the trial judge that the statement bears the clear indicia of reliability and trustworthiness, leaving the ultimate determination of credibility to the jury." State v. Saunders (1984), 23 Ohio App.3d 69,73, 491 N.E.2d 313. We find that the circumstances under which Baker's statements were made undermine a finding of trustworthiness. Specifically, the evidence indicates that Baker was the appellant's childhood friend. His statements that the appellant was innocent and that he was really the person who was dealing drugs did not come to fruition until the day of the trial, in essence, providing an ambush situation for the prosecution. Baker's admissions were not made contemporaneously with the appellant's arrest or in the months following his subsequent prosecution. Thus, the timing of the statement and the declarant's relationship to defendant are factors indicating a lack of trustworthiness. See State v. Mengistu (March 25, 2003), Franklin App. No. 02AP-497, citing, United States v. Hoyos (C.A.9, 1978), 573 F.2d 1111,1115.
 {¶ 42} The underlying concern of Evid.R. 804(B)(3) is that one individual can make statements exculpating another "and then rather easily claim the privilege when the government seeks to cross-examine him to discredit the statement." United States v. Mackey (C.A.1, 1997),117 F.3d 24, 29.
 {¶ 43} It would be terrible precedent to allow a defendant who has prior knowledge of exculpatory testimony to ambush the prosecution with a surprise witness who, unbeknownst to the prosecution, claims sole responsibility for the crime the defendant is accused of. The trial court would be forced to stop the trial and inform the witness of his constitutional right against self incrimination. The trial court would have to obtain counsel for the witness, who would advise the witness not to testify any further and exercise his Fifth Amendment right, effectively preventing the prosecution from cross examining him. The trial court would then be forced to grant a mistrial or to strike the witness's testimony from the record.
 {¶ 44} We find that the appellant has failed to establish the requisite elements of Evid.R. 803(B)(3), and the trial court did not err in striking Baker's testimony. The appellant's second assignment of error is overruled.
 {¶ 45} The appellant's third argument claims the trial court and/or the prosecutor erred by not granting Cyril Baker immunity from prosecution in order to secure his testimony.
 {¶ 46} We reject appellant's argument regarding the trial court because the court has no authority to grant immunity at a defendant's request. In State v. Landrum (1990), 53 Ohio St.3d 107, 120,559 N.E.2d 710, the Supreme Court stated that Ohio trial courts do not have authority to grant non-statutory use immunity to a defense witness at an accused's request. State ex rel. Leis v. Outcalt (1982),1 Ohio St.3d 147, 438 N.E.2d 443.
 {¶ 47} Moreover, R.C. 2945.44(A), immunity for witnesses turning state's evidence, "clearly reflects the intent of the General Assembly that immunity be used only as a prosecutorial tool to fulfill the government's need for testimony." Id. at 149. The government typically requests that immunity be granted to a witness who is culpable to some extent but whose testimony will also implicate a defendant. State v.Reiner (2001), 93 Ohio St.3d 601, 604, 757 N.E. 2d 1143.
 {¶ 48} As previously discussed, the appellant invited the error that resulted from Baker's testimony. The appellant knew Baker's identity, where to find him, and the testimony he would provide, yet failed to notify the prosecutor, the police, or the trial court of his existence. The prosecution is not required to grant immunity on the spot having no knowledge of Baker's identity, what his testimony would be, or without having an opportunity to investigate his story.
 {¶ 49} Furthermore, the record fails to show that the state coerced Baker into pleading the Fifth Amendment by threatening possible criminal action against him. When Baker decided to exercise his right against self incrimination, after consulting with an attorney, the prosecutor requested that Baker be detained and charged with a crime.
 {¶ 50} The trial court did not abuse its discretion in failing to grant Cyril Baker immunity from prosecution. The appellant's third assignment of error is overruled.
 {¶ 51} In his fourth argument, the appellant claims the trial court erred when it made him testify prior to the time the presence of his last witness, Johnny Scott, could be secured.
 {¶ 52} We review this argument under plain error because the record reflects that the appellant failed to object to the trial court's decision. To constitute plain error, the error must be on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. See State v. Tichon (1995),102 Ohio App.3d 758, 767, 658 N.E.2d 16. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Nolling, 98 Ohio St.3d 44, 2002-Ohio-7044,781 N.E.2d 88; State v. Waddell (1996), 75 Ohio St.3d 163, 166,661 N.E.2d 1043. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips (1995), 74 Ohio St.3d 72, 83,656 N.E.2d 643.
 {¶ 53} The record reflects that, at trial, the appellant failed to provide a witness list and did not subpoena Johnny Scott until 10:00 a.m. the day he was to testify. That day, at 3:15 p.m., the trial court asked the appellant if he had anyone else who would testify. The appellant asked for a continuance until the next day in order to secure the presence of Scott. The trial court had issued a bench warrant for Scott's arrest, but was unwilling to waste more time waiting for this witness. The appellant then took the stand in his own defense. The appellant claims he did not wish to testify until after Scott had testified; he claims that testifying before Scott testified prejudiced his defense, but he does not state how.
 {¶ 54} After reviewing the record, we find that the outcome of the trial would not have been different if the appellant had not testified at all or if he had testified after Scott. The appellant never indicated to the trial court that his decision to testify would be based in part of the testimony of Scott. The appellant's fourth assignment of error is overruled.
 Prosecutorial Misconduct {¶ 55} "VI. Defendant was denied due process of law and a fair trial by reason of improper prosecutorial argument."
 {¶ 56} In his sixth argument, the appellant claims the prosecutor committed prosecutorial misconduct by making improper comments during closing argument.
 {¶ 57} In addressing a claim for prosecutorial misconduct, we must determine (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected the defendant's substantial rights. State v. Smith (1984), 14 Ohio St.3d 13, 14, 14 Ohio B. 317,470 N.E.2d 883. The touchstone of this analysis "is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982),455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78. A trial is not unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. State v. Treesh, 90 Ohio St.3d 460, 464,2001-Ohio-4, 739 N.E.2d 749.
 {¶ 58} Appellate courts ordinarily decline to reverse a trial court's judgment because of counsel's misconduct in argument unless (a) the argument injects non-record evidence or encourages irrational inferences, such as appeals to prejudice or juror self-interest or emotion, (b) the argument was likely to have a significant effect on jury deliberations, and (c) the trial court failed to sustain an objection or take other requested curative action when the argument was in process.State v. Maddox (Nov. 4, 1982), Cuyahoga App. Nos. 44600 and 44608, at 9-10. Generally, the prosecution is entitled to a certain degree of latitude in making its closing remarks. State v. Woodards (1966),6 Ohio St.2d 14.
 {¶ 59} In the instant matter, the appellant claims the prosecutor erred by making the following statements in his closing arguments: (1) "My version is pretty simple, because it's what happened, it's the truth. There's no magic here;" (2) Detective Rudolph "gave them two $20's because Mr. Perry said, `let's get out of here;'" and finally, (3) "The State of Ohio, however, is here to pursue justice. * * * justice is when you right a wrong."
 {¶ 60} The appellant claims the prosecutor committed misconduct because the above comments (1) state his opinion as to the guilt of the defendant, (2) state evidence that was not in the record, and (3) were made to arouse the passion and prejudice of the jury towards the defendant.
 {¶ 61} After reviewing the entire trial record, we find the prosecutor's conduct was not improper as to affect the appellant's right to a fair trial. The prosecutor was commenting on the evidence he presented at trial and was not expressing his opinion on whether the defendant was guilty when he stated, "My version is pretty simple, because it's what happened, it's the truth." When he stated, "[Detective Rudolph] gave them two $20's because Mr. Perry said, `let's get out of here,'" he was simply reiterating the testimony of Detective Rudolph; Detective Rudolph clearly testified that she believed the appellant and Baker were working together selling drugs. Finally, the prosecutor's comment, "The state of Ohio, however, is here to pursue justice. * * * justice is when you right a wrong," although it may be an improper comment, it was taken out of context by the appellant and did not amount to sufficient prejudice to deny the appellant a fair trial. The appellant's sixth assignment of error is overruled.
 Improper Jury Instructions {¶ 62} "VII. Defendant was denied due process of law when the court gave a special instruction concerning the consideration of defendant's testimony."
 {¶ 63} "VIII. Defendant was denied due process of law when the court did not properly instruct the jury."
 {¶ 64} In his seventh and eighth arguments, the appellant claims the trial court erred by providing the jury with improper instructions.
 {¶ 65} Generally, it is the duty of the trial judge in a jury trial to state all matters of law necessary for the information of the jury in giving its verdict. R.C. 2945.11. A criminal defendant is entitled to complete and accurate jury instructions on all the issues raised by the evidence. State v. Sneed (1992), 63 Ohio St.3d 3, 584 N.E.2d 1160. Moreover, a single challenged jury instruction may not be reviewed piecemeal or in isolation, but must be reviewed within the context of the entire charge. See State v. Hardy (1971), 28 Ohio St.2d 89; State v.Price (1979), 60 Ohio St.2d 136, 141, 398 N.E.2d 772.
 {¶ 66} We review these assignments of error for abuse of discretion.State v. Wolons (1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443.
 {¶ 67} The appellant claims in his seventh argument that the trial court erred when it instructed the jury that it should take into account the appellant's interest in the outcome of the case when considering his trial testimony. The appellant cites State v. Group (2002),98 Ohio St.3d 248, 781 N.E. 2d 980, for the proposition that a trial judge may not single out a particular witness or group of witnesses and discuss their credibility. However, we find that the Ohio Supreme Court, in Group, was specifically referring to special credibility instructions as they relate to the testimony of police officers, not to defendants taking the witness stand in their own defense. Furthermore, the trial court was not commenting on the credibility of the appellant, only simply reiterating the obvious. We have reviewed the appellant's testimony and found it far from credible. The appellant's seventh assignment of error is overruled.
 {¶ 68} The appellant's eighth argument alleges that the trial court gave an erroneous instruction pertaining to possession of drugs and also erred by instructing the jury on "negligence" standards rather than on "knowingly" standards.
 {¶ 69} The appellant seems to argue that the sole definition of possession should be the definition provided by R.C. 2925.01(K), which states, "`possess' or `possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." However, this court has held that possession can be either actual or constructive.
 {¶ 70} The prosecution can establish constructive possession through the testimony of the police officers. This court held in State v. Palmer
(Feb. 6, 1992), Cuyahoga App. No. 58828, that the element of possession may be established as actual physical possession, or constructive possession where the contraband is under the defendant's dominion or control. Cf. State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus. Dominion and control may be proved by circumstantial evidence alone.State v. Taylor (1997), 78 Ohio St.3d 15, 676 N.E. 2d 82.
 {¶ 71} It may not be inferred, however, solely from mere access to the substance through ownership or occupation of the premises upon which the substance is found. R.C. 2925.01(L). Similarly, mere proof of presence in the vicinity of illicit drugs is insufficient to establish possession.Cincinnati v. McCartney (1971), 30 Ohio App.2d 45, 47-48. Finally, the mere fact that one is the owner or lessee of premises upon which illicit drugs are found, such premises are also regularly occupied by others, and the drugs are found in an area accessible to all occupants, possession cannot be imputed to the owner or lessee. State v. Haynes
(1971), 25 Ohio St.2d 264, 270; Palmer supra, at 5-6. Knowledge of illegal goods on one's property is sufficient to show constructive possession. We find no error, given that the instruction on constructive possession was proper.
 {¶ 72} Next, the appellant contends that the trial court instructed the jury to use a standard of "negligence" rather than "knowingly" when charging the jury on the elements of drug trafficking. The trial court stated:
 {¶ 73} "Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the 30th day of July in the year 2003, and in Cuyahoga County, Ohio, Clarence Perry did knowingly prepare for shipment, ship, transport, deliver, prepare for distribution or distribute a controlled substance, to wit: crack cocaine, a Schedule II drug, in an amount equal to or exceeding 10 grams but less than 25 grams, knowing or having reasonable cause to believe that such drug was intended for sale or resale by the offender or another.
{¶ 74} "Knowingly and controlled substance were previously defined for you and the same definitions apply therein.
 {¶ 75} "* * *
 {¶ 76} "In deciding whether the Defendant had reasonable cause to believe that Clarence Perry intended to sell or resell crack cocaine, you must put yourself in the position of this Defendant with his knowledge, or lack of knowledge, and under the circumstances and conditions that surrounded him at that time. You must consider the conduct of the persons involved and decide if their acts and words and all the surrounding circumstances would have caused a person of ordinary prudence and care tobelieve that Clarence Perry intended to sell or resell crack cocaine."
(Tr. at 448-449, emphasis added).
 {¶ 77} The second part of the jury charge stating, "* * * would have caused a person of ordinary prudence and care to believe * * *" should have read "the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person." R.C. 2925.03. However, this slight error, when reviewing the entire charge as a whole, does not constitute an abuse of discretion on behalf of the trial court. It is clear that the jury, from the instruction provided by the trial court, knew that the applicable legal standard to apply to the entire charge was "knowingly." The appellant's eighth assignment of error is overruled.
 Insufficient Evidence {¶ 78} "IX. Defendant was denied due process of law when he was convicted of possession of drugs found in the backseat of an unoccupied car."
 {¶ 79} "X. Defendant was denied due process of law when he was sentenced for a felony of the second degree in counts one and three."
 {¶ 80} In his ninth and tenth assignments, the appellant argues the that trial court erred by denying his motion for judgment of acquittal on the drug possession charges. He claims there was insufficient evidence produced by the prosecution to show that he knowingly acquired, used, or possessed drugs. He further claims that the evidence presented by the prosecution did not establish that the substance found in his car was actually 14.22 grams of crack cocaine.
 {¶ 81} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction * * *." Crim.R. 29; see, also, State v. Cobbins, Cuyahoga App. No. 82510, 2004-Ohio-3736. "An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact." State v. Watts, Cuyahoga App. No. 82601, 2003-Ohio-6480, citing State v. Jenks (1991), 61 Ohio St.3d 259,273, 574 N.E.2d 492. Sufficiency is a test of adequacy. State v.Thompkins, 78 Ohio St.3d 380, 386-387, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 82} The appellant contends there was insufficient evidence produced by the prosecution to prove he knowingly acquired, used, or possessed the crack cocaine found in his vehicle, or that he knowingly transported the drugs. At trial, Detective Sims testified that he watched the appellant, through binoculars, retrieve an item from the rear, passenger-side door of his goldcolored Buick Roadmaster, hand the item to a heavy-set male, who then completed a hand-to-hand transaction with a third party. Detective Sims watched this procedure occur two or three times and concluded from his experience that drug transactions were taking place. Detective Sims further testified that the gold-colored Buick Roadmaster, in which 34 rocks of the crack cocaine were subsequently found, belonged to the appellant, and he had seen the appellant driving the vehicle before; a computer check of the license plate confirmed the appellant's ownership.
 {¶ 83} Detective Rudolph testified that she was contacted by Detective Sims and was instructed to attempt a controlled drug buy from the appellant. She testified she purchased a crack rock from a heavy-set male, who obtained the rock from the appellant. Detective Rudolph testified that the appellant did not want to sell her a crack rock at first, believing her to be a police officer; however, the appellant eventually gave the heavy-set male a crack rock to sell her, and retrieved the rock from the rear, passengerside door of his Buick Roadmaster. Detective Rudolph also testified that the appellant told the heavy-set fellow to charge her "at least $25" for the rock. Detective Rudolph testified that the appellant abruptly decided to leave the corner, got into the Buick with another male and left. The testimony of Johnny Scott revealed that his nephew, Dan, had informed the group that the police were watching them from up the street. Detective Rudolph telephoned Sims and informed him that the appellant sold her what appeared to be crack cocaine.
 {¶ 84} Sergeant John Moran testified that drug dealers often use "middle-men" to make transactions for them so if one of them gets caught, they do not lose all of their drugs and money. Sergeant Moran testified that at the booking window, one of the marked $20 bills was found in the appellant's pockets along with $857 in varying denominations of bills.
 {¶ 85} After reviewing the record, we find that the evidence produced by the prosecution was sufficient to prove that the appellant had constructive possession over the crack cocaine that was found in his vehicle. The appellant was observed by two police detectives retrieving items from the rear, passenger-side door of his Buick Roadmaster and handing the items to the heavy-set male, who in turn made hand-to-hand transactions with third parties. When detective Rudolph engaged in one of these transactions, the item given to her by the heavy-set male — which he had gotten from the appellant — was later confirmed to be crack cocaine. The appellant's ninth assignment of error is overruled.
 {¶ 86} In his tenth assignment of error, the appellant contends there was insufficient evidence to prove that the substance found in his Buick Roadmaster was actually crack cocaine in the requisite amount needed to support a felony conviction of the second degree for drug trafficking and possession.
 {¶ 87} The appellant contends that Tracy Kramer, a scientific examiner for the Cleveland Police Department, stated that the rocklike substance weighing .36 grams, which was sold to Detective Rudolph, and the rock-like substance weighing a total of 14.22 grams, retrieved from the appellant's vehicle, simply contained cocaine. Because Kramer identified these substances merely as being cocaine, the appellant should only have been convicted of trafficking and possession, felonies of the third and fourth degrees.
 {¶ 88} After reviewing Kramer's testimony, it is readily apparent that it was her expert opinion that the substance that was found in the appellant's vehicle and sold to Detective Rudolph was crack cocaine. Her testimony reveals there were 34 Ziploc bags, each containing an off-white, rock-like material, weighing a total of 14.22 grams, and containing cocaine. Kramer stated that this substance was commonly known as crack cocaine. R.C. 2925.01(GG) defines crack cocaine as a "compound, mixture, preparation, or substance that is or contains any amount of cocaine that is analytically identified as the base form of cocaine or that is in a form that resembles rocks or pebbles generally intended for individual use." The appellant's tenth assignment of error is without merit and overruled.
 Sentencing Error {¶ 89} "XI. Defendant was denied due process of law when he was sentenced to more than a minimum sentence for a felony of the second degree."
 {¶ 90} In his eleventh argument, the appellant claims that the trial court erred in sentencing him to more than the minimum sentence, in contravention of Ohio's sentencing guidelines and the U.S. Supreme Court's decision in Blakely v. Washington (2004), U.S. ___, 124 S.Ct. 2531,159 L.Ed.2d 403.
 {¶ 91} We first address the appellant's claim concerning Blakely,
which involves the constitutionality of a prison sentence that was imposed under Washington state's sentencing scheme. Defendant Blakely had pleaded guilty to a second-degree kidnapping charge involving domestic violence and also the use of a firearm. In the state of Washington, second-degree kidnapping is a class B felony, carrying a maximum punishment of ten years imprisonment. Under Washington's sentencing statute, the "standard range" of incarceration for second-degree kidnapping with a firearm is 49 to 53 months. The sentencing statute permits a trial judge to impose a sentence above the standard range if he finds substantial and compelling reasons justifying an "exceptional sentence." One of the aggravating factors justifying the imposition of an exceptional sentence is whether the offender acted with "deliberate cruelty." The trial court found that defendant Blakely had acted with deliberate cruelty in carrying out the kidnapping and imposed a prison sentence of 90 months. The United States Supreme Court reversed the trial court's imposition of an exceptional sentence holding "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Blakely, supra at 2536, quoting Apprendi v. New Jersey (2000), 530 U.S. 466, 490, 120 S.Ct. 2348,147 L.Ed. 2d 435.
 {¶ 92} The court further held that the "statutory maximum" for purposes of Blakely and Apprendi is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. Blakely, supra at 2537. The Blakely court found that the maximum sentence that the trial judge was permitted to impose for second degree kidnapping with use of a firearm was 53 months, not the sentence of 90 months that the trial court had imposed. The court concluded the state of Washington's sentencing procedure violated defendant Blakely'sSixth Amendment right to a trial by jury and declared his prison sentence invalid.
 {¶ 93} We decline to accept the proposition that Blakely, when applied to Ohio's sentencing structure, requires that a jury make additional factual determinations in order for the trial court to impose a sentence on an offender which is more than the presumptive minimum. Blakely
specifically states, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury."Blakely, supra at 2536 (emphasis added).
 {¶ 94} Under Ohio law, the minimum prison sentence for drug trafficking and drug possession, felonies of the second degree, is two years; the maximum sentence is eight. This is Ohio's standard range in sentencing. The appellant's six-year prison sentence is well within, and does not go beyond, the standard sentencing range, unlike the sentence imposed in Blakely. Moreover, the findings made by the trial court under R.C. 2929.14(B)(2) do not constitute "additional facts" under Blakely and enhance his sentence past the standard range because the maximum sentence the appellant could receive is eight years, not two. The appellant's prison sentence would be in violation of Blakely only if he received a sentence greater than the maximum allowed on a single conviction based on facts that were not found by the jury or included in a defendant's plea.
 {¶ 95} Furthermore, the appellant conceded at sentencing that he had served a prior prison sentence. Assuming that Blakely is applicable to Ohio sentencing laws, we find that his sentence would be in conformity with Blakely nevertheless.
 {¶ 96} Having disposed of the Blakely issue, we will now address the argument that the appellant's sentence is contrary to Ohio sentencing law.
 {¶ 97} Abuse of discretion is not the standard of review with respect to sentencing; instead, an appellate court must find error by clear and convincing evidence. R.C. 2953.08(G)(2) provides that an appellate court may not increase, reduce, or otherwise modify a sentence imposed under Senate Bill 2 unless it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law.
 {¶ 98} Clear and convincing evidence is more than a mere preponderance of the evidence; it is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." State v. Garcia (1998), 126 Ohio App.3d 485,710 N.E.2d 783, citing Cincinnati Bar Assoc. v. Massengale (1991),58 Ohio St.3d 121, 122, 568 N.E.2d 1222. When reviewing the propriety of the sentence imposed, an appellate court shall examine the record, including the oral or written statements at the sentencing hearing and the presentence investigation report. R.C. 2953.08(F)(1)-(4).
 {¶ 99} R.C. 2929.14 (B) states, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies: "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term. "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 100} At sentencing, the appellant conceded that he previously had been convicted of a felony and had served a prison sentence. Among other convictions, the appellant admitted to having a prior conviction for aggravated burglary and drug trafficking. The appellant had been found guilty of drug trafficking and possession in an amount exceeding 10 grams but less than 25, both felonies of the second degree. A review of the record indicates that the trial court first considered the minimum sentence and, finding it inappropriate, sentenced the appellant to six years on each of the second degree felonies. The trial court found that the appellant failed to take responsibility for his actions or to show remorse. The trial court stated that a six-year prison term would be necessary to protect the public, punish the appellant's conduct, and to do otherwise would diminish the seriousness of the offense and his past criminal conduct.
 {¶ 101} We find that the prison sentence imposed on the appellant is supported by the record and is not contrary to law. The appellant's eleventh assignment of error is overruled.
 {¶ 102} "V. Defendant was denied a fair trial by reason of cumulative error committed during the course of the trial."
 {¶ 103} In his fifth argument, which we address last, the appellant claims he was unfairly prejudiced by cumulative errors that were committed during his trial. He argues that the trial court erred by not conducting a weighing process before allowing testimony about the appellant's prior criminal record and prior arrest.
 {¶ 104} The record indicates that the appellant took the stand in his own defense. On cross examination, the prosecution inquired into whether he had past criminal convictions, to which the appellant replied, "yes." The state is allowed to inquire into the defendant's prior criminal record in order to attack his credibility under Evid.R. 609, so long as the probative value outweighs the danger of unfair prejudice. We find the line of questioning pursued by the prosecutor to be proper.
 {¶ 105} Second, evidence of the appellant's prior arrests would be admissible under Evid.R. 404(B) in order to illustrate proof of motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake. The prosecutor questioned the appellant about a previous arrest involving the very same police detectives, during which the appellant was found to have crack cocaine in his possession. We note that the door to this line of questioning was opened by defense counsel when he was trying to establish that the appellant would not have sold crack to Detective Rudolph because he knew she was a police officer who had arrested him before.
 {¶ 106} Our examination of the record reveals that the appellant received a fair trial. We have previously determined that any errors which were committed were not prejudicial. It is an accepted principle that a person accused of a crime is entitled to a fair trial, but that does not mean he is entitled to a perfect trial. State v. Dickerson
(1907), 77 Ohio St. 34, 82 N.E. 969; State v. Oviedo (1982),5 Ohio App.3d 168, 175, 450 N.E.2d 700; State v. Davis (1975),44 Ohio App.2d 335, 338 N.E.2d 793; State v. Mack (Dec. 2, 1993), Cuyahoga App. No. 62366. The appellant's fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this. court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, J., Concurs in Judgment only on assignment of Error 2, Withseparate concurring opinion; and concurs fully with all remainingassignments of error.
 *Sweeney, J., Concurs in Judgment only.
*Sitting by Assignment: Judge James D. Sweeney, Retired, of the Eighth District Court of Appeals.
 CONCURRING OPINION