JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Otis Hicks ("Hicks") appeals the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we affirm the trial court.
 I. {¶ 2} According to the case, the Cuyahoga County Grand Jury returned a three-count indictment against Hicks. Count one charged Hicks with carrying a concealed weapon, in violation of R.C. 2923.12, a fourth-degree felony. Count two charged Hicks with tampering with evidence, in violation of R.C. 2921.12, a third-degree felony. Count three charged Hicks with possession of criminal tools, in violation of R.C. 2923.24, a fifth-degree felony.
 {¶ 3} On February 13, 2004, Hicks waived his right to a trial by jury and tried the case to the bench. The trial court found Hicks guilty of counts one and two, carrying a concealed weapon and tampering with evidence, but not guilty of count three, possession of criminal tools. Hicks was sentenced to four years of community control sanctions, with the following conditions: "[Hicks] to perform 200 hours of court community work service at the minimum rate of 40 hours/month; enter and complete carrying concealed weapon program; [Hicks] forbidden to own or possess a gun."[1]
 {¶ 4} Hicks appealed the trial court's sentence to this court on March 31, 2004. However, this court of appeals ruled the appeal was not a final appealable order and journalized a dismissal on November 29, 2004. The case went back to the trial court and it issued a nunc pro tunc entry on December 7, 2004. The nunc pro tunc entry sentenced Hicks to four years of community service. Hicks then appealed the trial court's nunc pro tunc entry with this court on January 5, 2005. This appeal now follows.
 {¶ 5} According to the facts, officers Joseph Romano and Shaun Kessler of the Lyndhurst Police Department were called to respond to a fight at the BW-3 restaurant parking lot. After arriving at the scene, Officer Romano learned there was a male in the area hiding a firearm. Officer Romano then walked in the direction of a backyard residence adjacent to BW-3 to conduct a search. As he approached a chain-link fence separating the residential area from the business parking lots, he saw Hicks walking away from the residential backyards toward the BW-3 parking lot. Officer Romano suspected Hicks may have had a weapon and ordered him onto the ground for safety. Officer Kessler searched the backyard areas and found a gun in the backyard of the second house north of the BW-3 parking lot.
 {¶ 6} Officer Kessler advised the other officers that he located the gun. The gun was a silver .38 caliber gun. After another officer took photos of the gun, Officer Kessler picked up the gun and discovered that the weapon was loaded with three rounds. Hicks was then arrested, advised of his rights and taken to the police station. Hicks claimed that the gun was not his, but was given to him by a male named Brutus.
 {¶ 7} At this point, an employee from BW-3 called to tell the police that the vehicle involved in the initial 9-1-1 call returned to the restaurant. The vehicle was a white four-door Lexus. The police went back to BW-3, removed the three occupants, and searched the car. The police found an indenture in the shape of the butt of a gun with six rounds in the center console. The ammunition was the same as the ammunition discovered in the .38 caliber gun hidden in the backyard. Sergeant McConville also located some marijuana in the vehicle.
 {¶ 8} As Officer Kessler walked the newly arrested suspects into the police department, Hicks saw them and asked the police why his friends were at the police station. Officer Kessler told Hicks that since no one admitted to ownership of the gun, all of them, including Hicks, were being charged with owning the gun. At that point, Hicks admitted that the gun and the marijuana were his.
 II. {¶ 9} Appellant's assignment of error states the following: "The court improperly denied Defendant's Rule 29 motion for acquittal and erred in not finding the testimony was against the manifest weight of the evidence."
 {¶ 10} Crim. R. 29(A) governs motions for acquittal and provides for a judgment of acquittal if the evidence is insufficient to sustain a conviction. An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact. Sufficiency is a test of adequacy. State v. Perry, Cuyahoga App. No. 84397,2005-Ohio-27.
 {¶ 11} R.C. 2921.12, tampering with evidence, states the following:
"(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
"(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;
"(2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation."
 {¶ 12} R.C. 2923.12, carrying concealed weapons, states the following: "(A) No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following: (1) A deadly weapon other than a handgun; (2) A handgun other than a dangerous ordnance; (3) A dangerous ordnance."
 {¶ 13} In the case at bar, Hicks' actions constituted tampering with evidence. The police were called to the scene of BW-3 in response to a fight in the parking lot. The officers were advised that a male, later identified as Hicks, ran toward the residential area. The officers then observed Hicks coming from that same residential area where the gun was later discovered. Moreover, Hicks repeatedly admitted that he was trying to dispose of and "get rid of" the gun.[2] Hicks concealed and removed the weapon with the purpose of impairing its availability as evidence, knowing that a police investigation was in process.
 {¶ 14} Hicks' actions also constituted the carrying of a concealed weapon. The deadly weapon at issue was a loaded firearm. Hicks and the state stipulated in the record that the firearm at issue was operable.[3]
Moreover, Hicks admitted to possessing the weapon to dispose of it. Hicks' written statement stated that he was carrying the gun with the purpose of disposing of it. The record states the following regarding the Hicks' written statement:
"MS. BARNETT: The first part that I read before, `I — The police where [sic] coming. I was disposing of an armed weapon, that was not mine butin my — position [sic].' Okay.
"Then the second one that I just read, `I was going to leave. The police came. So, I had the weapon, and went to dispose of it.'
"I think —
"THE COURT: I see nothing inconsistent with that."
(Emphasis added.)
 {¶ 15} Moreover, Officer Romano testified that Hicks told him the gun was given to him by another male in the car, and Hicks was carrying the gun with the purpose of disposing of it.[4]
 {¶ 16} Although, Hicks originally denied ownership of the gun, he later confessed to owning the weapon when he learned that his friends were going to be charged with possessing the weapon as well. Officer Romano stated the following in the record:
"We all returned back to the station, taking the males that were placed under arrest. When we brought them all back into the booking area, Mr. Hicks asked why his friends were back there.
"Patrolman Columbo and myself advised him, that they were all going to be charged with having the gun, since nobody was `fessing up' to owning it, at which time Mr. Hicks told us the gun was his, as well as the marijuana that Sergeant McConville found."
 {¶ 17} In addition to the testimony above and Hicks' written statement, the officers thoroughly described the custom-made weapon compartment in the white Lexus. The officers also testified that ammunition possessed by Hicks was found inside this custom-made compartment. The testimony is consistent with the photos, gun, and bullets admitted as evidence on behalf of the state, state's exhibits 2 through 12.
 {¶ 18} Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, Myers v.Garson, 66 Ohio St.3d 610.
 {¶ 19} We find that the evidence in the record demonstrates that the trial court's decision was supported by competent, credible evidence going to all of the essential elements of the case. The evidence in the case at bar is more than sufficient to sustain this conviction. Hicks' assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Sean C. Gallagher, J., Concur.
[1] See State v. Hicks, Cuyahoga App. No. 84418, 2004-Ohio-6113.
[2] Tr. 20, 26, 44.
[3] Tr. 6.
[4] Tr. 20, 26.